**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Global Commodities Group, LLC and James Besch** | ) ) ) |
| *Plaintiffs,* | ) ) |
| -against- | ) Case No. 1:13-cv-2063 (SAS) (HBP) ) |
| **National Union Fire Insurance Company of Pittsburgh, PA** | ) ) ) |
| *Defendant.* | ) ) ) |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF CROSS-MOTION TO COMPEL ARBITRATION
AND IN OPPOSITION TO MOTION TO STAY ARBITRATION**

As shown in Defendant's Memorandum in Support of Cross-Motion to Compel Arbitration (the "Memorandum") and this Reply, the pleadings and available evidence prove that, under Delaware and New Jersey law, Plaintiffs are alter egos of Access Global. *See* Def. Mem. [D.E. 17]. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Compel Arbitration and in Further Support of Motion to Stay Arbitration (the "Opposition") fails to rebut that conclusion. *See* Pl. Opp'n [D.E. 20]. Plaintiffs should be compelled to arbitrate. At minimum, discovery is warranted, *see* Def. Mem. at 23 n.16, as Plaintiffs' Opposition tacitly concedes.

## BACKGROUND FACTS

**I.   BESCH'S AFFIDAVIT IS FACTUALLY INACCURATE AND FAILS TO PROVIDE DOCUMENTARY SUPPORT FOR BESCH'S BALD ASSERTIONS**

National Union has presented document-driven facts proving the alter ego relationship among Plaintiffs and Access Global and the injustice Plaintiffs and Access Global are perpetrating against National Union. Def. Mem. at 2-9. Plaintiffs' Opposition relies almost exclusively on an affidavit from Besch containing conclusory assertions devoid of documentary support for almost all material propositions at issue in the Motion to Compel. *See* 2d Besch Aff. [D.E. 19]. Further, although Plaintiffs continue to withhold documents relevant to Besch's claims regarding Access Global's and Global Commodities' corporate formalities and business, the testable propositions in Besch's affidavit reveal serious inaccuracies.[1]

The few documents Plaintiffs produced raise important questions about the veracity of Besch's affidavit. Citing February 2010 e-mails between George Poon and John Hertzer, for

---

[1] For example, without documentation, Besch presents his version of Besch International, Inc.'s ("Besch International") business operations from 1981 to 2006. 2d Besch Aff. ¶¶ 2-5; *see* Pl. Opp'n at 6-7. But public records show that from 1986 to 2003, Besch International's charter was *void*. [D.E. 23-8] at 1-2, 4-5, 7. And though Besch's affidavit claims "we gradually wound down [Besch International] in the early 2000s," 2d Besch Aff. ¶ 4; *see* Pl. Opp'n at 7, in fact (after years of doing business through a company with a void charter), Besch petitioned in 2003 to reinstate Besch International's charter. *See* [D.E. 23-8] at 4-5.

example, Besch alleges that at the request of himself, Access Global, Novel, and their broker John Hertzer, Chartis confirmed that the Policy insured the transactions at issue. 2d Besch Aff. ¶ 25. The cited exchange, however, actually *refutes* Besch's assertion. *See* [D.E. 19-3] at 2. First, as the e-mails reflect, Besch, Access Global, Novel and Hertzer requested nothing—in truth, DF Deutsche Forfait AG ("DF") sought clarification because DF thought that Besch planned to use a third party to "evade" the Policy terms. Def. Ex. 12 at 3-6; *see* [D.E. 19-3] at 2. Second, no one informed Chartis that Global Commodities would be the "third party supplier" in DF's hypothetical transaction. [D.E. 19-3]. Third, although the term "directly" was added to the Policy, Chartis did not agree to cover the transactions Besch claims but only those complying with the Policy. *Id.* at 1. In fact, Besch did not believe that "directly" extended coverage to the intended transactions, and he twice thereafter sought other terms, which Chartis never approved. *See* [D.E. 23-3] at 10-11, 12. In sum, Besch's affidavit is wholly unreliable[2] and fails to refute National Union's pleadings and evidence.[3]

## II.  PLAINTIFFS AND ACCESS GLOBAL ARE ALTER EGOS OF EACH OTHER

### A.  Access Global's and Global Commodities' Corporate Structures Are Still Relevant Factors in the Alter Ego Analysis

Notwithstanding certain lessened corporate formalities for LLCs, *see* Pl. Opp'n at 2-6, the corporate structure of Access Global and Global Commodities and the manner in which Besch

---

[2] Besch's affidavit repeatedly misstates National Union's claims. National Union never argued in its Memorandum that "Global Commodities was . . . incorporated for use in a transaction with National Union . . . ." 2d Besch Aff. ¶ 14. Nor did National Union claim that Besch "set up Access to avoid the tax and financial problems of Besch International . . . ." *Id.* ¶ 6. National Union argued that "[r]ather than resolve Besch International's legal and financial troubles . . . , Besch . . . incorporated Global Commodities . . . ." Def. Mem. at 5. Access Global and Global Commodities are so intertwined that not even Besch can keep them straight.

[3] "Vague assertion[s]" supported only by "self-serving statement[s]" in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion. *See Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292 (2d Cir. 1974); Def. Mem. at 14.

operates those companies are highly relevant factors in the alter ego analysis. As discussed further below, strict compliance with corporate formalities does not insulate LLCs, much less Plaintiffs, from an alter ego finding. *See infra* Argument Parts I.A.2, I.B.2.

### B. Access Global and Global Commodities Violate their Operating Agreements

Even if Plaintiffs and Access Global observed certain lessened corporate formalities for LLCs, they still do not comply with all necessary legal requirements. Significantly, Access Global and Global Commodities fail to comply with their operating agreements. For instance, Access Global's operating agreement requires that "[t]he Managers shall maintain complete and accurate books of account of the Company's affairs at the Company's principal place of business." [D.E. 19-1] Art. 6.1. Access Global's corporate book, *see* 2d Besch Aff. ¶ 10, however, consists of only (1) a short form standing certificate and a certificate of formation, (2) an operating agreement allegedly executed nearly nine months after Access Global was formed, (3) incomplete corporate and tax documents, and (4) blank membership certificates. *See* [D.E. 19-1]; [D.E. 23-4, 23-5]; Def. Ex. 14.

Similarly, Global Commodities' limited liability company agreement specifically requires documentation of any transfer of ownership. *See* [D.E. 23-6] at 5-6. The company's records, however, omit the transfer of Richard Besch's 10% interest upon his death. *See* [D.E. 23-6, 23-7]; *accord* 2d Besch Aff. ¶ 17.

### C. Plaintiffs' Claims about Access Global's and Global Commodities' Records, Capitalization, Solvency, and Separate Corporate Existence Are Inaccurate

Plaintiffs claim that Access Global and Global Commodities maintain complete tax, financial, and corporate records, are adequately capitalized and solvent, do not commingle funds, retain an unknown bookkeeper and accountant, and file taxes. Pl. Opp'n at 2-6. Plaintiffs' claims

rely almost exclusively on the *ipse dixit* in Besch's affidavit, and thus carry no weight.[4]  *See supra* Part I.  In any event, available documents contradict them.  *See supra* Part II.B; Def. Ex. 15. (suggesting that Global Commodities failed to timely file its 2010 and 2011 tax returns).[5]

### D.   Access Global's and Global Commodities' Allegations of Other Unidentified Transactions Fail to Rebut National Union's Alter Ego Arguments

Plaintiffs' unsupported assertion that Access Global and Global Commodities conducted other business with certain third parties, *see* Pl. Opp'n at 3, 5; 2d Besch Aff. ¶¶ 8, 15, 18, even if true, proves nothing about whether Plaintiffs acted as alter egos in those transactions.[6]  Nor do Plaintiffs' assertions refute National Union's documented facts on the core issue—that Besch, Access Global and Global Commodities acted as alter egos here.  *See* Def. Mem. at 2-25.

### III.   BESCH USED ACCESS GLOBAL AND GLOBAL COMMODITIES TO PERPETRATE AN INJUSTICE AGAINST NATIONAL UNION

The available documents prove that Besch used Access Global to deceive National Union and to induce National Union to issue the Policy, and then used Global Commodities to execute financing transactions that National Union did not, and never intended to, insure.  *See* Def. Mem. at 4-9; Def. Ex. 12 at 3-6; Def. Ex. 13.

Plaintiffs contend that the transactions at issue in the Arbitration were trade transactions, and thus that Plaintiffs and Access Global did not deceive National Union.  *See* Pl. Opp'n at 10.[7]

---

[4] That Access Global baldly claims to have advanced certain insurance premiums, see Pl. Opp'n at 4; 2d Besch Aff. ¶ 26, neither proves that Access Global was adequately capitalized to meet all its financial demands, nor the source of the capital itself (which may have been borrowed).

[5] Failure to timely file or pay taxes is a recurring theme for Besch's entities.  Def. Mem. at 5.

[6] Plaintiffs' admission that Besch created Global Commodities to transact with the Export-Import Bank of the United States when Access Global could not, *see* Pl. Opp'n at 4; 2d Besch Aff. ¶ 14, illustrates how Besch created companies to evade clear limitations and engage in transactions his other entities could not.  *Accord* Def. Mem. at 4-9.

[7] Though the Policy did not require that goods physically be transferred, *see* Pl. Opp'n at 9, the Policy did require that goods actually be sold.  *See* Def. Mem. at 6-9; [D.E. 23-1] at 6; [D.E. 23-3] at 1; *see also* Def. Ex. 12 at 1-2.  Here, none were sold.  *See* Def. Mem. at 8-9.

The available documents prove otherwise. The "Mexican Crop Structure" Plaintiffs and Insureds erected was a "program" intended to deceive National Union and provide impermissible financing to Covadonga. Def. Ex. 13; *see* Def. Mem. at 6-9; *accord* Pl. Opp'n at 2-3, 7-8. Moreover, that Intertek allegedly inspected the rice in the June-July 2010 transactions does not prove that the transactions were true sales. *See* Pl. Opp'n at 10. Intertek allegedly inspected the rice *only* before the June 16 transaction and not before the July 26 or July 28 transactions, and there is no proof that the rice even existed in the proper quantities for those latter transactions. *See* [D.E. 23-9] at 9, 10; [D.E. 23-10] at 1, 4. Second, Plaintiffs tacitly admit that the September 2010 beans transaction constituted impermissible inventory financing. Pl. Opp'n at 10; 2d Besch Aff. ¶ 27.

## ARGUMENT

**I.    NATIONAL UNION HAS SUFFICIENTLY PLED A PRIMA FACIE ALTER EGO RELATIONSHIP BETWEEN PLAINTIFFS AND ACCESS GLOBAL**

Notwithstanding the specific and abundant factual allegations in National Union's Memorandum, which cross-references its Statement of Defense and Counterclaims,[8] plus the substantial documentation National Union has presented, Plaintiffs assert that "National Union does not establish a *prima facie* case of alter ego responsibility." *See* Pl. Opp'n at 11. The allegations in National Union's Memorandum and Statement of Defense and Counterclaims, alone or together, not only exceed the post-*Twombly* requirements of Federal Rule of Civil Procedure 8(a)—they constitute sufficient proof to compel Plaintiffs to arbitrate along with their alter ego, Access Global.[9] None of Plaintiffs' cited cases refute this proposition.

---

[8] Contrary to Plaintiffs' suggestion, National Union need not "defend" its submission in the Arbitration in this litigation, *see* Pl. Opp'n at 11, because a different pleading standard applies in the Arbitration. Def. Mem. at 12. In any case, even that pleading exceeds *Twombly*'s standard.

[9] Contrary to Plaintiffs' suggestion, *see* Pl. Opp'n at 11, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), did not affect the cases cited by National Union ruling that Rule 8(a)'s pleading standard—not Rule 9's heightened standard—applies to alter ego claims unless fraud is a necessary element of the claim. *See, e.g., Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F.

### A. Plaintiffs and Access Global Are Alter Egos Under Delaware Law

#### 1. *Plaintiffs Do Not Dispute the Delaware Alter Ego Test*

Plaintiffs do not dispute that under Delaware law, two companies are alter egos of each other if (1) they "operated as a single economic entity," and (2) an "overall element of unfairness . . . is present." *Fletcher v. Atex*, 68 F.3d 1451, 1457-58 (2d Cir. 1995); Def. Mem. at 19.[10]

#### 2. *First Element: Access Global and Global Commodities Operate As a Single Economic Entity*

The available evidence shows that Access Global and Global Commodities functioned as a single entity that Besch controls. Delaware law enumerates five factors that are considered in the first prong of the alter ego analysis. *Fletcher,* 68 F.3d at 1458. Without supporting documents,[11] Plaintiffs assert that Global Commodities satisfies all five factors, claiming that the company (1) was adequately capitalized, (2) is solvent, (3) maintains complete records, observes corporate formalities, and is not required to pay dividends or have a board of directors, (4) maintains segregated funds, and (5) does not function as a façade for the operations of Besch or Access Global. The documents again contradict Plaintiffs' conclusory assertions. Although LLCs may dispense with certain corporate formalities such as a board of directors, Plaintiffs fail to meet these five factors. *See supra* Background Facts Part II.A-C; *see also id.* Part I.

---

Supp. 117, 122 (S.D.N.Y. 1996); *see also Time Warner Cable, Inc. v. The Networks Grp., LLC*, No. 09 Civ. 10059 (DLC), 2010 WL 3563111, at *4 (S.D.N.Y. Sept. 9, 2010) ("a veil-piercing claim . . . is governed by Rule 8's liberal pleading standard") (post-*Twombly*); Def. Mem. at 12-13; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). National Union did not claim that the transactions were "fraudulent," Pl. Opp'n at 10, but that they were impermissible inventory financing. Def. Mem. at 6-9; *see* Def. Ex. 13; *accord* Pl. Opp'n at 2-3, 7-8.

[10] Though Plaintiffs espouse a three-part test, in effect, they analyze the applicable two-part *Fletcher* test. *See Fletcher*, 68 F.3d at 1457-58; Def. Mem. at 19 & n.12; Pl. Opp'n at 12-21.

[11] National Union does not argue that Plaintiffs bear the burden of proof on the alter ego issue, as Plaintiffs falsely assert. To establish the right to a trial, however, Plaintiffs must unequivocally deny that they are bound by an arbitration agreement and produce "some evidence . . . to substantiate the denial." *Overseas Oil Transp. Corp. of Pan. v. Phibro Energy, A.G.*, No. 88 Civ. 1302 (JMC), 1990 WL 130773, at *4 (S.D.N.Y. Sept. 7, 1990); Def. Mem. at 14.

Contrary to Plaintiffs' erroneous assertions, National Union has never argued that common ownership, control and location are alone *sufficient* to pierce the corporate veil or that Besch's sole management of Access Global and Global Commodities is not authorized under the Delaware LLC Act. *See* Del. Code tit. 6, § 18-401 (2013). Indeed, Plaintiffs ignore that Delaware courts have found such factors to be highly relevant when determining whether two companies function as a single entity, even in circumstances with an LLC. *See Sykes v. Mel Harris & Assocs., LLC,* 757 F. Supp. 2d 413 (S.D.N.Y. 2010); *Leber Assocs., LLC. v. Entm't Grp. Fund, Inc.*, No. 00 Civ. 3759 (LTS) (MHD), 2003 WL 21750211 (S.D.N.Y. July 29, 2003). No cases that Plaintiffs cite in their Opposition dispute this proposition.

### 3. *Second Element: An Overall Element of Unfairness Is Present Here*

#### a) Besch and Global Commodities Attempted to Use the Corporate Form to Evade and Defeat the Policy

Under Delaware law, transacting business through a corporate entity to circumvent a legal obligation presents the "overall element of unfairness" required to pierce the corporate veil. *See Nufarm v. RAM Research*, No. 16179-NC, 1998 WL 668648, at *4 (Del. Ch. Sept. 15, 1998) (fraud or "similar injustice" includes "contravention of law or contract") (quotation omitted); *Tristate Courier and Carriage, Inc. v. Berryman*, No. C.A. 20574-NC, 2004 WL 835886 (Del. Ch. Apr. 15, 2004). Like the defendants in *Nufarm* and *Tristate*, Besch and Access Global used another company to unjustly circumvent the legal obligations in connection with the Policy. *See* Def. Mem. at 4-9; Def. Ex. 12 at 3-6; Def. Ex. 13; *accord supra* Background Facts Part II.D n.6; Pl. Opp'n at 4.[12]

---

[12] In this context, fiduciary duties are clearly analogous to contractual ones. *See* Pl. Opp'n at 21.

> b) *The Merits of the Policy Coverage Questions Pending in the Arbitration Are Not at Issue in This Proceeding*

Plaintiffs try to claim that they are entitled to coverage under the Policy. Pl. Opp'n at 15-18. The Court, however, need not reach this issue. Whether the Policy terms could be interpreted to permit the collusive sham transactions that Access Global, Plaintiffs and Novel engaged in is immaterial to the immediate alter ego question before the Court.[13] *Moreover, National Union does not contend that Access Global's and Plaintiffs' breach of the Policy terms alone constitutes the injustice required to pierce the corporate veil.*[14] Rather, Besch and Access Global used Global Commodities as the *very vehicle* to deceive National Union and bypass the Policy. The proper forum to determine coverage is in the Arbitration; this suit should determine only whether Plaintiffs should be compelled to arbitrate.

**B.   Besch and Access Global Are Alter Egos Under New Jersey Law**

1.   *Plaintiffs Do Not Dispute the New Jersey Alter Ego Test*

Plaintiffs do not dispute that under New Jersey law, the corporate veil should be pierced when (1) a shareholder so dominated a corporation that "it had no separate existence" and "was merely a conduit" for the individual, and (2) the shareholder used the controlled company "to perpetrate a fraud or injustice, or otherwise circumvent the law." Def. Mem. at 15.

2.   *First Element: Besch Dominated Access Global and Used It as His Conduit*

The available documents prove that Besch dominated Access Global and used it as his conduit. New Jersey law enumerates eight factors that are considered in the first prong of the alter ego analysis. Without providing adequate supporting documentation, Plaintiffs assert that

---

[13] Plaintiffs' contention that National Union's arguments are "barred" by rules of contract interpretation and New York case law relating to fraudulent concealment claims is therefore a wholly meritless diversion. *See* Pl. Opp'n at 16, 18.

[14] Thus, Plaintiffs' assertion that "National Union's underlying claim is a breach of the Policy . . . [that] cannot provide the injustice necessary to pierce the corporate veil" fails. Pl. Opp'n at 20.

Access Global satisfies all eight factors, claiming that the company (1) was adequately capitalized, (2) observes corporate formalities, (3) is not required to pay dividends, (4) is solvent, (5) maintains segregated funds, (6) does not require officers and directors, (7) maintains complete records, and (8) does not function as a façade for Besch's dealings.[15]  Even if the third and sixth factors do not apply because Access Global is an LLC, *see* N.J.S.A. § 42:2B-27, Plaintiffs' argument fails.  Plaintiffs' claims rely almost exclusively on Besch's unreliable affidavit.  *See supra* Background Facts Part I; Pl. Opp'n at 2-4.  Further, the few available documents in fact directly contradict Plaintiffs' bald assertions.  *See supra* Background Facts Part II.B-C.

Plaintiffs argue that the "simplified" formalities of a New Jersey LLC must be considered in the veil-piercing inquiry.  *See* Pl. Opp'n at 1, 3, 22.  But even if Access Global's LLC status relieves it of certain corporate formalities, the ultimate result here remains unchanged.  Indeed, *D.R. Horton*, on which Plaintiffs rely, actually supports the alter ego case against Plaintiffs.  *See D.R. Horton, Inc. v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778 (N.J. Super. Ct. Aug. 10, 2005).  First, the *D.R. Horton* court found that the first element of the alter ego test (domination and control) should be accorded less weight than the second element (fraud or injustice) because of the relaxed LLC formalities.  *Id*. at *31.[16]  Second, unlike the *D.R. Horton* defendant—who the court expressly found did not intentionally mislead or harm the plaintiff, *id*. at *5—the evidence here shows that Besch intentionally used Access Global to harm National Union.

---

[15] Additionally, Access Global's operating agreement states that "[f]or financial accounting and tax purposes the Company's net profits or net losses shall be determined on an annual basis . . . ." [D.E. 19-1] Art. 3.1.  Plaintiffs do not address this issue, or provide any documents showing that Besch and Access Global ever adhered to that corporate formality.

[16] *See also OTR Assocs. v. IBC Servs., Inc.*, 801 A.2d 407, 411-12 (N.J. Super. Ct. App. Div. 2002) (shell company that "observed all the corporate proprieties" was not immune from veil-piercing because "in every functional and operational sense, [it] had no separate identity").

### 3.   *Second Element: Besch Used Access Global to Perpetrate an Injustice*

Access Global executed an agency agreement with Novel in part to finance Covadonga. *See* Pl. Opp'n at 7-8. Besch then used Access Global to plan and execute a multi-entity scheme to provide financing to Covadonga under a Policy that did not, and was not intended to, cover it. Def. Mem. at 4-9; *see* Def. Ex. 12 at 3-6; Def. Ex. 13. In other words, Besch was the puppeteer in a scheme designed to abuse the corporate form. *See Melikian v. Corradetti*, 791 F.2d 274 (3d Cir. 1986); *Hunt Constr. Grp., Inc. v. Farina*, No. 11-4933 (FSH) (PS), 2012 WL 72286 (D.N.J. Jan. 10, 2012).[17] As such, Besch and Access Global are alter egos under applicable law.

## II.   PLAINTIFFS ARE PROPER PARTIES TO THE ARBITRATION

Plaintiffs are alter egos that are inseparably intertwined with Access Global and the issues in the Arbitration. National Union is thus entitled to compel them to arbitrate in a full and final proceeding in a single forum. Def. Mem. at 24-25. *Horizon Plastics, Inc. v. Constance*, No. 00 Civ. 6458 (RCC), 2002 WL 398668, at *5 (S.D.N.Y. Mar. 13, 2002) is but one of many cases affirming that a nonsignatory alter ego should be compelled to arbitrate. Plaintiffs' attempt to draw irrelevant factual differences between themselves and the employee seeking to compel arbitration in *Horizon* does not defeat the underlying legal precepts that apply to Plaintiffs.

## CONCLUSION

National Union respectfully requests that this Court grant Defendant's Cross-Motion to Compel Plaintiffs to Arbitration, deny Plaintiffs' Motion to Stay, and dismiss this case. At a minimum, National Union requests that this Court grant discovery on the issues before it.

---

[17] That the *Hunt* and *Melikian* defendants used the corporate form to avoid a financial obligation while Plaintiffs used it to evade a contractual one is a hollow distinction. *See* Pl. Opp'n at 25.

Dated: May 15, 2013

/s/ Joseph R. Profaizer
Joseph R. Profaizer
Rosanna M. Neil
Michael Anderson
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1860 (Phone)
(202 551-1705 (Fax)
joeprofaizer@paulhastings.com
rosannaneil@paulhastings.com
michaelanderson@paulhastings.com

Kurt W. Hansson
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(202) 312-6627 (Phone)
(202) 230-7843 (Fax)
kurthansson@paulhastings.com

*Counsel for Defendant National Union*

LEGAL_US_E # 104048936