**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

**GLOBAL COMMODITIES GROUP, LLC**
**and JAMES BESCH,**

          **Plaintiffs,**

    **- against -**

**NATIONAL UNION FIRE INSURANCE**
**COMPANY OF PITTSBURGH, PA,**

          **Defendant.**
----------------------------------------------------------X

**OPINION AND ORDER**

**13 Civ. 2063 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION[1]

       This action to stay an arbitration demand arises out of a credit

insurance policy (the "Policy") issued by defendant National Union Fire Insurance

("National Union") to Novel Commodities S.A. ("Novel") – a Swiss commodities

trading company – and Access Global Capital, LLC ("Access"), a New Jersey

limited liability company that acts as a financier for the sale of agricultural

commodities in Latin America.  The Policy insured against the risk of loss in

transactions involving Novel's purchase and sale of agricultural commodities.

-----

[1]     Subject matter jurisdiction exists over this action, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.  *See* Complaint ("Compl.") ¶ 4.  The background facts recited in this section are drawn from the Complaint, presumed true for purposes of these motions, and are not in dispute. *See id.* ¶¶ 6, 9.

Novel -- financed by Access -- undertook two transactions in which a First Purchaser was to purchase agricultural commodities from Cia Arrocera Covadonga, S.A. de CV ("Covadonga") – a Mexican food producer and wholesaler – and sell them to Novel, which was then to sell them back to Covadonga. However, Covadonga allegedly failed to pay Novel when it repurchased the rice and beans.

Novel submitted two claims to National Union under the Policy, but National Union refused to pay.  Novel then initiated arbitration proceedings against National Union to recover under the policy.  Novel was later joined in these proceedings by Access.

On March 9, 2013, National Union served a demand to arbitrate upon Global Commodities Group, LLC ("Global") – the First Purchaser under the Policy for the transactions at issue – and James Besch – on the grounds that they are alter egos of Access.  Besch and Global in turn brought this action seeking a stay of the arbitration demand and a declaratory judgment that they are not obliged to participate in the arbitration.  National Union has cross moved to compel Global and Besch to arbitrate.

For the following reasons, plaintiffs' motion to stay arbitration is granted and defendant's motion to compel arbitration is denied with leave to re-file after limited discovery.

## II.   BACKGROUND[2]

### A.   The Policy

National Union issued the Policy to Novel and Access (together, the "Insureds")[3] on June 24, 2010.[4] The Policy insured, with some restrictions, a triangular sales arrangement from Covadonga to a First Purchaser, which would sell the goods to Novel, who would then sell them back to Covadonga.

A condition of the Policy was that Novel could not purchase the product directly from Covadonga or any related entities.[5] Specifically, Endorsement 15 of the Policy provides that "[t]rade credit insurance will not be provided in situations where Access Global [Capital, LLC] and/or Novel have purchased product directly from either Agroindustrias Covadonga, S.A. de C.V., its subsidiaries, or its affiliates and subsequently on-sells the product to either Agroindustrias Covadonga, S.A. de C.V., its subsidiaries, or its affiliates."[6]

---

[2]     Except where otherwise stated, the following facts are drawn from the Complaint and are presumed to be true for purposes of this motion.

[3]     Access is wholly owned by Besch. *See* Plaintiffs' Memorandum of Law in Support of Motion to Stay Arbitration ("Pl. Mem.") at 2.

[4]     *See* Compl. ¶ 6.

[5]     *See id.* ¶ 9. Plaintiffs maintain that National Union never requested information about the identity of the First Purchaser. *See* Pl. Mem. at 2.

[6]     *Compl.* ¶ 10.

-3-

## B.   The Disputed Transactions

The underlying dispute relates to two triangular transactions in which Global was the First Purchaser.[7] After an alleged payment default by Covadonga, the Insureds filed two claims under the Policy, relating to: (1) their alleged sale of paddy rice to Covadonga (the "Paddy Rice Claim"); and (2) their alleged sale of mayocoba beans to Covadonga (the "Mayocoba Beans Claim").  Together, these claims totaled $9,862,189.84.[8] In November 2011, National Union denied both claims, and disclaimed Novel and Access' coverage under the Policy.[9]

### 1.   The Paddy Rice Claim

The Insureds' first claim relates to the alleged sale of paddy rice to Covadonga on July 28, 2010.  On June 16, 2010, Covadonga entered into a contract to sell 12,346.447 metric tons of paddy rice to Global – to be stored in Covadonga's warehouses – for roughly $4,000,000.[10] In its Answer in the

---

[7]      Covadonga sold rice and beans to Global, who sold it to Novel, who then sold it back to Covadonga. *See id.* ¶ 9.  Global was originally owned 99% by Besch and 1% by his father.  In 2010, Besch's sister, Teresa Flynn, became 50% owner and Besch remained a 50% owner.  Besch is the managing member and has sole management control of Global. *See* Affidavit of James Besch ("Besch Aff."), in support of Plaintiffs' Motion to Stay Arbitration ("Pl. Mot.") ¶ 17.

[8]      *See* Compl. ¶ 13.

[9]      *See id.*

[10]     *See* 11/30/12 National Union's Statement of Defense and Counterclaims to the Arbitration ("NU Arb. Stmt."), Ex. 4 to Plaintiffs' Motion to

arbitration, National Union alleges that title to the paddy rice did not pass from Covadonga to Global, because the Certificates of Deposit issued by Covadonga in connection with the transaction were invalid.[11]

On July 26, 2010, Global contracted to sell the rice to Novel, allegedly transferring title to the rice by endorsing to Novel the Certificates of Deposit that it had received from Covadonga.[12] Two days later, on July 28, 2010, Novel sold the rice back to Covadonga for a $822,174.91 profit.[13] National Union alleges that, because the Certificates of Deposit were invalid, this transfer of title was also ineffective. Further, National Union alleges that this transfer of title was invalid because the rice "*never existed in the stated quantities* and *never moved* from Covadonga's warehouses and silos."[14]

### 2. The Mayocoba Beans Claim

On September 10, 2010, Covadonga entered into another contract with Global to sell 5,278,009 metric tons of mayocoba beans for roughly

---

Stay Arbitration ("Pl. Mem.") ¶ 39.

[11]   *See id.*

[12]   *See id.* ¶ 40.

[13]   *See id.* ¶ 42.

[14]   Memorandum of Law in Support of Defendant's Cross-Motion to Compel Arbitration and in Opposition to Motion to Stay Arbitration ("Def. Mem.") at 9.

$4,000,000.[15]  On the same day, Global sold the beans to Novel, though the beans remained in Covadonga's warehouses.  Novel then sold the beans back to Covadonga for a purported $894,094.72 profit.

As with the paddy-rice transaction, National Union alleges that: (1) Covadonga did not pass title to the beans to Global – and therefore Global did not pass title to Novel – because the Certificate of Deposit issued by Covadonga was invalid;[16] and (2) the beans "allegedly involved *never existed in the stated quantities* and *never moved* from Covadonga's warehouses and silos."[17]

### C.    The Pending Arbitration Proceeding

On November 16, 2012, Access and Novel jointly demanded arbitration against National Union.[18]  Subsequently, Novel, Access, and National Union entered into an Agreed Arbitration Protocol.[19]  On March 7, 2013, National Union served a demand to arbitrate upon Global and Besch as Counter-Respondents, claiming that they were the alter egos of Access.  Besch and Global

---

[15]    *See* NU Arb. Stmt. ¶ 44.

[16]    *See id.* ¶ 45.

[17]    Def. Mem. at 9.

[18]    In June 2012, Novel served a demand for arbitration on National Union.  *See Compl.* ¶ 14.

[19]    *See id.*

maintain they are not parties to the Policy or the Agreed Arbitration Protocol and did not agree to arbitrate any dispute with National Union.[20]

## III.   APPLICABLE LAW

### A.   Arbitration

Arbitration clauses are subject to the Federal Arbitration Act ("FAA").[21]   Under the FAA, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[22]   "A court should not stay arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[23]   At the same time, "[a]rbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit."[24]

---

[20]   *See id.* ¶ 16.

[21]   *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 1773 (2010).

[22]   *In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[23]   *Bedroc Contracting L.L.C.  v. Mason Tenders Dist. Council of Greater New York and Long Island*, No. 06 Civ. 6399, 2006 WL 3057311, at *2 (S.D.N.Y. Oct. 25 2006) (quoting *Thomas James Assocs. v. Jameson*, 102 F.3d 60, 65 (2d Cir. 1996)).

[24]   *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010).

However, the Second Circuit has stated that a non-signatory may be bound by arbitration agreements entered into by others under, inter alia, a "veil-piercing/alter ego" theory.[25]

  This Court must follow a three step procedure to determine whether Global and Besch – both non-signatories – have a duty to arbitrate. *First*, the Court must determine whether National Union has pled a prima facie alter ego case against the plaintiffs. *Second*, if National Union has adequately pled that Global and Besch are alter egos of Access, then the Court must consider the evidentiary submissions of the parties to determine if there are material issues of fact as to whether they are alter egos.[26] *Third*, if there is a material issue of fact, the Court must allow a jury to determine the alter ego issue pursuant to Section 4 of the FAA.[27] "The party seeking an order compelling arbitration must 'substantiate [its] entitlement [to arbitration] by a showing of evidentiary facts that support its claim

---

[25] *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999). *Accord Thomson–CSF, S.A. v. American Arbitration Ass'n* 64 F.3d 773, 776 (2d Cir. 1995) (recognizing "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.").

[26] When a district court is required to determine arbitrability, the standard for summary judgment applies. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

[27] *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

-8-

that the other party agreed to arbitration.'"[28]  "If the party seeking arbitration meets this burden, 'the party opposing [arbitration] may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'"[29]

## B.     Alter Ego Status

A federal court applies the choice of law rules of the state in which it sits.[30]  Under New York's choice-of-law rules, the controlling law with respect to National Union's claims is the law of the state where each alter ego was incorporated (Global was incorporated in Delaware and Access was incorporated in New Jersey).[31]  Therefore, Delaware law controls whether Access and Global are alter egos while New Jersey Law determines whether Besch is the alter ego of Access.

---

[28]     *Ayco Co., L.P. v. Frisch*, No. 11 Civ. 580, 2012 WL 42134, at *3 (N.D.N.Y. Jan. 9, 2012) (quoting *D'Antuono v. Service Road Corp.*, 789 F. Supp. 2d 308, 319 (D. Conn. 2011)).

[29]     *Id.* (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

[30]     *See Tri-State Emp't Servs. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 (2d Cir. 2002).

[31]     The Parties agree to the choice of law for each plaintiff.  Because Global is accused of being the alter ego of Access, Global's state of incorporation (Delaware) applies.  *See Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366, 2006 WL 2987054, at *9 (S.D.N.Y. Oct. 18, 2006) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

### 1.     Delaware

In determining if alter ego status applies to a Delaware corporation, the Second Circuit applying Delaware law focused on "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness."[32]  Factors relevant to establishing the first prong include:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.[33]

In establishing the second factor, a plaintiff "need not prove that the corporation was created with fraud or unfairness in mind.  It is sufficient to prove that it was so used."[34]

---

[32]     *NetJets Aviation, Inc. v LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (citing *Fletcher*, 68 F.3d at 1457).

[33]     *Id.* at 176-77 (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. Civ. A. 1331, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989) (quoting *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) ("*Golden Acres*"), *aff'd*, 879 F.2d 857 and 879 F.2d 860 (3d Cir. 1989)).

[34]     *Id.* (citing *Martin v. D.B. Martin Co.*, 10 Del. Ch. 211, 219 (1913) (corporate form may be disregarded "when used as a shield for fraudulent or other illegal acts, though it does not appear that the arrangement was originally intended to perpetrate a fraud").

### 2. New Jersey

New Jersey law is substantially similar to Delaware's law in that to find alter ego status, two conditions must be met: "first, 'there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist,' and second, 'adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'"[35]

"'[A] sole (individual or corporate) shareholder or multiple shareholders run the risk of a piercing claim when they (i) make no distinction between their pocketbooks and the corporate pocketbook; (ii) fail to capitalize the corporation adequately; and (iii) fail to comply with corporate formalities.'"[36]The following factors weigh in favor of piercing the corporate veil of an alter ego:

> [G]ross undercapitalization[,] failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and [whether] the corporation is merely a facade for the

---

[35]    *North Am. Steel Connection, Inc. v. Watson Metal Prods Corp.*, No. 12 Civ. 2296, 2013 WL 1095445 (3d Cir. Mar. 18, 2013) (quoting *State Capital Title & Abstract Co. v. Pappas Bus. Servs.*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009)).

[36]    *Erickson v. Leonard*, No. 47–02, 2008 WL 706278, at *7 (N.J. Super. App. Div. Mar. 18, 2008) (quoting Pachman, Title 14A Corporations, Comment 6c(1) on N.J.S.A. 14A:5-30 (2007)).

operations of the dominant stockholder or stockholders.[37]

"It is well established that 'a corporation is a separate entity from its shareholders . . . [and] a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'"[38]  In some circumstances, courts may pierce the corporate veil by finding that a corporate entity was "a mere instrumentality" of the individual shareholder.[39]  "An individual may be liable for corporate obligations if he was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests."[40]

### 3.    Limited Liability Corporations

"In the alter-ego analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such

---

[37]   *Horizon Plastics, Inc. v. Constance*, No. 00 Civ. 6458, 2004 WL 1234049, at *3 (S.D.N.Y. June 2, 2004) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (internal citations and quotation marks omitted)).

[38]   *Verni v. Harry M. Stevens, Inc.*, 903 A.2d 475, 497 (App. Div. N.J. 2006).

[39]   *See Department of Envir. Prot. v. Ventron Corp.*, 94 N.J. 473, 500–01 (1983).

[40]   *Sean Wood, L.L.C. v. Hegarty Group, Inc.*, 422 N.J. Super. 500, 517 (2011) (citing *Tsai v. Buildings by Jamie, Inc.* (*In re Buildings by Jamie*), 230 B.R. 36, 42 (Bankr. D.N.J. 1998)).

formalities are legally required."[41] "Lesser weight should be afforded the element of domination and control and adherence to corporate formalities, because the statute authorizing limited liability companies expressly authorizes managers and members to operate the firm."[42]

## IV. DISCUSSION

### A. Whether Global and/or Besch Are Alter Egos of Access

Plaintiffs argue that a stay of arbitration is warranted because National Union has not established that Global and Besch are the alter egos of Access. Specifically, plaintiffs argue that National Union has not adequately pled that there was either disregard for the corporate form and fraud ,or misuse using the corporate form.

#### 1. Did Global and Access Operate as a Single Economic Entity?

National Union's arbitration demand alleges that Global and Besch are alter egos of Access because: (1) Besch maintains an ownership interest in both Access and Global; (2) Besch controls both companies; (3) the companies have the same office address; and (4) the companies operate as a single economic enterprise. Further, National Union alleges that plaintiffs perpetrated an injustice by "inducing

---

[41] *NetJets Aviation, Inc.*, 537 F.3d at 178.

[42] *D.R. Horton Inc.–New Jersey v. Dynastar Dev., LLC*, No. MER–L–1808–00, 2005 WL 1939778, at *20–21 (N.J. Super. Law. Div. 2005).

-13-

National Union to issue a policy to cover financing transactions National Union did

not, and never intended to, insure" and then used Global to "circumvent the policy

limitations and to engage in financing transactions prohibited under the policy."[43]

To establish that Global is the alter ego of Access, National Union

must first show that Access and Global operated as a single economic unit.[44]

National Union argues that the companies are exclusively control led by a single

owner, who made all business decisions and ran the daily operations of both

companies from his home, used his personal e-mail address to conduct both

businesses, and used the same telephone number for both companies.  It is

undisputed that Global has a significant relationship with Access, having the same

owner (Besch) and using the same address and telephone number.  Beyond this,

National Union has not provided evidence that Global failed to comply with

corporate formalities, make independent day-to-day operational decisions, or

remain sufficiently capitalized.[45]  However, at this preliminary stage, National

---

[43]     Def. Mem. at 8.

[44]     *See NetJets Aviation, Inc.*, 537 F.3d at 177. *See also Leber Assocs., LLC. v. Entertainment Grp. Fund, Inc.*, No. 00 Civ 3759, 2003 WL 21750211, at *14 (S.D.N.Y. July 29, 2003).

[45]     *See Mason v. Network of Wilmington, Inc.*, Civ.A. No. 19434–NC, 2005 WL 1653954, at *4 (Del. Ch. Ct. July 1, 2005) ("Being the sole shareholder of two different legal entities, housed in the same office building and possessing the same phone number at separate (and not sequential) times does not constitute a

Union has no way of knowing whether Access and Global observed such corporate formalities.[46]

It is true that as a limited liability company, Global is exempt from some corporate form requirements such as paying dividends and having corporate directors other than Besch.  Global presents some evidence that Global — which is only 50% owned by Besch — is a valid business operation.  Specifically, Global was incorporated for transactions prior to the dealings with National Union, continues to do business, and has a separate operating agreement.  National Union counters that this is immaterial because Global was acting as an alter ego of Besch "for purposes of" the transactions.

Plaintiffs rely almost exclusively on Besch's affidavit, without providing evidence to support any assertions that the companies are adequately funded or observe the necessary formalities.  Although the facts already alleged by National Union alone may not be sufficient to establish that Global and Access are alter egos they do suggest a high degree of interrelatedness.  At this stage, National

---

sham that 'exist[s] for no other purpose than as a vehicle for fraud.'") (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)).

[46]     National Union claims that it has asked plaintiffs and Access to "provide documents demonstrating whether Global is adequately capitalized, has ever paid dividends, or siphons off assets, but plaintiffs and Access have thus far refused." Def. Mem. at 21.

Union has sufficiently established the first prong of the alter ego test.

The second prong of Delaware's alter ego test is adequately alleged based upon National Union's allegations of unfairness and misconduct (Access using Global as a means to circumvent the rule restricting Access from acting as a First Purchaser on the underlying transactions). While the allegations are sufficient to raise the alter ego issue, Global disputes that it is the alter ego of Access. Therefore, questions remain as to whether Access used Global to further its plan to circumvent the restrictions placed on the transactions. National Union has alleged enough of an interrelationship between Access and Global to show that discovery is necessary to determine if there are material issues of fact as to whether the corporations are alter egos.[47]

### 2. Was Global an Instrumentality or Alter Ego of Besch?

National Union also argues that Global is Access's alter ego because of their mutual alter ego relationship with Besch. National Union maintains that Besch exercised exclusive control over Global from his home and using his personal e-mail address, and was merely a shell corporation used for his own personal dealings. For the reasons discussed above, there are questions of fact as to whether Besch used Global to further his plan to circumvent the restrictions placed

---

[47]     *See Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366, 2006 WL 2987054, at *10 (S.D.N.Y. Oct. 18, 2006).

on the transactions.  Accordingly, discovery is required to support or disprove

National Union's claims.

### 3. Did Access Act as an Instrumentality or Alter Ego of Besch?[48]

Under New Jersey's two-part test to determine alter ego status,

National Union must prove that (1) Access was a mere instrumentality or alter ego

of Besch; and (2) Besch abused the business form to perpetrate a fraud, injustice, or

otherwise circumvent the law.

National Union maintains that the evidence demonstrates that Besch

dominated Access such that the company did not have a separate existence.

National Union argues that Besch was Access's sole owner, that he alone

comprised the company's officers, directors or members, and that he exercised

exclusive control over Access from his personal residence and using his personal e-

mail address.  The mere fact that all or most of the corporate stock is owned by one

individual or a few individuals will not afford sufficient grounds for disregarding

---

[48]     National Union argues that because Access was incorporated in New Jersey, New Jersey law determines whether Besch and Access are alter egos. Plaintiffs, who in their original Memorandum of Law only focused on Delaware law, do not dispute the application of New Jersey law with respect to Access in their reply brief.

-17-

the corporate form.[49] Allegations that an individual was the sole or primary shareholder are inadequate as a matter of law to pierce the corporate veil. However, as discussed above, plaintiffs have not provided National Union with information regarding whether Access is adequately capitalized, solvent, maintained complete records or observed other corporate formalities. There is insufficient information to determine whether Besch overstepped the bounds and used Access to perpetrate an injustice. Therefore, there are questions as to whether Besch used Access to further his plan to circumvent the restrictions placed on the transactions. A period of discovery is required to adduce evidence to support or disprove National Union's claims.[50]

### B.    The Arbitrator Is Bound By This Court's Finding on Alter Ego

Plaintiffs argue that they should not be compelled to arbitrate because there is "no controversy requiring declaratory relief against Besch and Global Commodities," they are not necessary parties to the Arbitration and they cannot pursue claims against National Union.[51] National Union, in turn, argues that because plaintiffs are alter egos of Access, joinder is appropriate.

---

[49]    *See Coppa v. Taxation Div. Director*, 8 N.J. Tax 236, 245 (Tax 1986).

[50]    *See Horizon Plastics, Inc. v. Constance*, No. 00 Civ. 6458, 2002 WL 398668 at *5 (S.D.N.Y. Mar. 13, 2002).

[51]    Pl. Mem. at 10-11.

-18-

A ruling by this Court that Global and/or Besch are alter egos of Access would establish that Access and Novel are not entitled to recover under the Policy because they violated the First Purchaser requirement of Endorsement 15. It is unfortunate that deciding the threshold question of arbitrability as to these non-signatories might moot the arbitration.[52]  However, it is unavoidable in light of this Court's mandate to decide questions of arbitrability.  But if this Court holds that Global and Besch are not alter egos of Access, then National Union will still be able to present the other defenses it has raised in the arbitration proceedings, *e.g.*, that the Certificates of Deposit effectuating the disputed transactions were invalid.

## V.   CONCLUSION

For the foregoing reasons, the plaintiffs' motion to stay the arbitration is granted until a final decision on alter ego status is reached.  If, after discovery and a consideration of the evidentiary submissions, issues of fact remain, a trial must be held to determine whether Global and Besch are alter egos of Access.[53]  Defendant's cross motion to compel arbitration is denied with leave to renew.  The Clerk of the Court is

---

[52]      This problem could have been avoided if National Union had moved to compel alter ego discovery from Novel and Access in the arbitration proceedings.  If that discovery revealed that Global was the alter ego of Access, then National Union would have prevailed in the arbitration proceedings based on Endorsement 15.

[53]      *See* 9 U.S.C. § 4.

-19-

directed to close the instant motions (Docket Nos. 2 & 15).  A conference to set a discovery schedule is set for September 24, 2013 at 4:30 p.m.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 29, 2013

**- Appearances -**

**For Plaintiffs:**

Richard C. Yeskoo, Esq.
Yeskoo, Hogan & Tamlyn LLP
909 Third Avenue, 28th Floor
New York, NY 10022
(212) 983-0900

**For Defendant:**

Michael Anderson, Esq.
Rosanna M. Neil, Esq.
Joseph R. Profaizer, Esq.
Paul Hastings LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1860